# Exhibit 6
# Engelbrecht Agreement

# AGREEMENT FOR LEGAL SERVICES

THIS AGREEMENT, is made and entered into by and between <u>Catherine Engelbrecht</u> (hereinafter "Client") and The Bopp Law Firm, P.C. (hereinafter "The Firm"). This agreement supersedes any and all previously executed agreements between the parties with respect to the services contemplated herein.

WHEREAS, Client desires to retain The Firm to provide legal services, as authorized by TTV, in a lawsuit challenging TTV's Validate the Vote project in Georgia, *Fair Fight v. TTV* ("*Fair Fight* Case").

THE PARTIES AGREE as follows:

Section 1 <u>Payment for legal services</u>. True the Vote ("TTV") agrees to pay all legal fees, attorney fees, costs, and expenses arising out of The Firm's provision of legal services in representing Client, and any other defendant as authorized by TTV, in the *Fair Fight* Case and in any subsequent appellate proceedings. Client provides consent that the legal fees, expenses, and costs relating to this matter will be paid by TTV. The Firm agrees that Client is not responsible for legal fees for representation of Client in this matter because TTV has agreed to pay the legal fees for representation of Client in this matter. Costs and expenses are in addition to the hourly charges for legal services. Client is responsible for the reasonable costs and expenses incurred in representing Client in the above-noted matter. TTV has agreed to pay all costs and expenses, and upon that payment, Client is not responsible for the reasonable costs and expenses incurred in representing Client in the above-noted matter. Client agrees and consents that the Firm may provide a copy of this Agreement to TTV.

Section 2 <u>Third Party Payor</u>. TTV has been informed that The Firm and its attorneys must resolve any conflict of interest arising out of TTV's payment of legal fees, cost and expenses for any defendant in accordance with The Firm's and its attorneys' professional ethical obligations. TTV agrees and consents that it may not interfere in any way with The Firm's or its attorneys' professional judgment or the attorney-client relationship between The Firm, its attorneys, and any other defendants.

Section 3 <u>Joint Representation</u>. Client agrees and consents that The Firm may jointly represent TTV, Client and the Other Plaintiffs (collectively, "Joint Clients") in the above-referenced matter.

> *Conflicts of Interest*: The Firm has determined that, at this time, joint representation is permitted because there does not appear to be a conflict of interest between any Joint Clients. The Firm will continue to evaluate the case and the existence of any possible conflicts of interest. Should a conflict arise, The Firm will advise Client and comply with the requirements of the

applicable professional conduct rules, which may include withdrawal from representation.

*Confidential Information*: Client has been informed that, in the usual case, The Firm and its attorneys would be obligated to keep confidential all information relating to the representation as contemplated by Indiana Rule of Professional Conduct 1.6. Client has been informed that this rule does not apply here with respect to the Joint Clients and that The Firm and its attorneys may be required to share Client's confidential information material to this representation with Joint Clients. Accordingly, Client agrees and consents that The Firm may discuss the case with any Joint Clients, together or apart, and that The Firm may share any information material to this representation learned from Client with Joint Clients during the joint representation.

*Attorney-Client Privilege*: Client has been informed that, in the usual case, communications between Client and The Firm or its attorneys would be protected by the attorney-client privilege. Client has been informed that the privilege may not apply here to the same extent because of the joint representation. Client has been informed that the privilege may not protect communications between Client and The Firm or its attorneys in litigation between Client and any of the Joint Clients. Client consents to any diminishment of the attorney-client privilege caused by this joint representation.

*Joint Settlements*. Client has been informed that Client and Joint Clients may have differences in willingness to make or accept offers of settlement. Client has been informed that The Firm will inform each jointly-represented party including Client of all material terms of any settlement before any offer is made or accepted on behalf of one or multiple parties. Client has been informed that a Joint Client has the final say in accepting or rejecting any offer of settlement applicable to that Joint Client.

Section 4 <u>Hourly Rates</u>. TTV will pay the following hourly rates for attorneys: $850/hour for James Bopp, Jr., $700/hour for Richard E. Coleson, $540/hour for Jeffrey P. Gallant, $365/hour for Courtney Turner Milbank, $322/hour for Melena Siebert, and $285/hour for Rob Citak. Other attorneys may assist at The Firm's discretion at their corresponding hourly rates charged by the Firm. Hourly rates for attorneys undergo periodic review and may increase during the term of this Agreement upon notice to TTV.

Section 5 <u>Costs and Expenses</u>. Costs and expenses are in addition to the hourly charges for legal services. Costs and expenses include, but are not limited to, court charges, copies, postage, telephone, fax, travel, parking, special materials, exhibits, photographs, investigators, experts, computer assisted legal research and all other

disbursements, costs, or expenses attributable to said legal services. TTV agrees to pay for computer assisted legal research at $3.00 per minute. TTV agrees to pay for copies and facsimiles (incoming or outgoing) at the rate of $.25 per page for 1-25 total pages, $.15 per page for 26-100 total pages, and $.10 per page for more than 100 total pages. Total pages are those copied or facsimiled during a copying or facsimiling event.

Section 6 <u>Petition for Attorneys' Fees</u>. The legal challenge may succeed with respect to counterclaims brought under statutes to which 42 U.S.C. § 1988 or another fee-shifting statute applies ("Fee-shifting"). If a counterclaim does succeed with a claim or claims to which Fee-shifting applies, to the extent permitted by applicable law, Client assigns the right to seek attorney's fees, costs, and expenses to The Firm, and Client agrees to cooperate in the preparation and filing of a petition for fees, costs, and expenses to be paid by Plaintiffs/Counter-Defendants upon the successful conclusion of the case. If any attorney fees or costs have been paid by Client, Client shall be reimbursed to the extent that those attorney fees and costs have been awarded by the Court and paid by the Plaintiffs/Counter-Defendants. If there are any attorney fees or costs that were not paid by Client, The Firm shall be paid these unpaid attorney fees and costs before Client is reimbursed from the Court award.

Section 7 <u>Offers of Settlement</u>. Nothing in this agreement should be read to limit Client's right to accept a written offer made by the Plaintiffs/Counter-Defendants Client's counterclaim or counterclaims if that offer, as a condition of resolving the counterclaim or counterclaims, requires Client to waive the right to attorney fees, costs, and expenses entirely or limits the amount of attorney fees, costs, and expenses to be paid by Plaintiffs/Counter-Defendants.

> The Firm will advise Client regarding any written offer to resolve Client's counter-claim or counter-claims based on an evaluation of its effect on Client's interests, as represented and furthered by allegations made and the relief sought by the counterclaim.

> If Client accepts an offer to settle a counter-claim that limits or waives attorney's fees, costs, or expenses that would be recoverable pursuant to Fee-shifting, the Client may, at The Firm's option, be liable to The Firm for the difference between the amount of attorney's fees, costs, and expenses paid by Plaintiffs/Counter-Defendants, their agents, or assigns pursuant to the settlement and the amount of attorney's fees, costs, and expenses that would reasonably be expected to be awarded by a court pursuant to the relevant Fee-shifting statute and its provisions are interpreted and applied by the U.S. Court of Appeals for the Eleventh Circuit.

Section 8 <u>Invoices</u>. The Firm shall invoice TTV monthly for any fees, costs or expenses incurred under this Agreement. All invoices are due and payable within 30 days of receipt. Each invoice shall constitute an account stated and objections

must be made in a reasonable time. Interest accruing at 1.5% per month will be applied to past due accounts until paid. TTV agrees to pay all attorney fees, costs and expenses of collecting TTV's account if legal action is taken to collect fees, costs and expenses due The Firm.

Section 9 <u>Client's Cooperation</u>. By this Agreement, Client agrees to cooperate with the Firm and provide all information known to Client or available to Client, which in the opinion of the Firm would aid in its representation of Client and Joint Clients in this matter. Client further agrees to notify the Firm immediately of any change in Client's address or contact information, to review all documentation sent to Client by the Firm, and to promptly and thoroughly participate in the preparation and/or production of any documents that we request of Client.

Section 10 <u>Termination by TTV or a Joint Client</u>. The Firm will be obligated to honor any instructions of TTV, or any other Joint Client represented by The Firm in the Fair Fight Case, requesting termination of the Firm's representation of the party in the Fair Fight Case, only if such instructions are delivered to The Firm in writing bearing the party's personal signature. If a party elects to terminate The Firm's representation, TTV is responsible for all fees, costs, and expenses incurred pursuant to this Agreement. Should The Firm be required to perform any services or functions after receipt of such instructions, TTV is responsible for any fees, cost, and expenses for these services.

Section 11  <u>Withdrawal by The Firm</u>. The Firm also may withdraw from the representation of any party in the *Fair Fight* Case, upon a party's failure to make payments in accordance with this Agreement, failure to cooperate with the agreed provisions of representation, or failure to follow the advice of the Firm, or under any circumstances permitted by or required by the Indiana Rules of Professional Conduct. Any termination of The Firm's representation would be subject to the approval of the tribunal and will only be done after reasonable notice has been provided.

Section 12 <u>File Retention and Destruction</u>. At the conclusion of the matter addressed in this Agreement, documents and property that any Joint Client has provided to us will, at the Joint Client's request, be returned to the Joint Client. The Firm shall retain the Joint Clients' legal files for an indefinite period. At any time after five years have elapsed since the conclusion of the matter, after ten business days of notifying a Joint Client in writing, which includes by electronic mail sent to their last known electronic mail addresses, The Firm may destroy these files unless the Joint Client notifies The Firm in writing that it wishes to take possession of them. The Firm reserves the right to charge administrative fees and costs associated with researching, retrieving, copying, and delivering such files.

Section 13 <u>Disputes</u>. This Agreement shall be governed by Indiana law and courts in the State of Indiana. Any dispute arising under or in connection with the

Agreement or related to any matter which is the subject of this Agreement shall be resolved on the basis of Indiana law without giving effect to Indiana's conflict of law principles and brought in a court located in Indiana.

The undersigned persons represent that they are duly authorized to sign this agreement and hereby agree to the terms and conditions of legal employment, as specified above and that they have read and are otherwise informed of the provisions and limitations specific to joint representation as set forth Section 3 <u>Joint Representation.</u>

This Agreement may be signed in any number of counterparts. Each counterpart is an original and together, all of the counterparts form a single document. Signatures delivered by email in PDF format shall be effective.

_____, for Client          12-29-20
an Individual                                 Date

_____, for The Firm        12/29/20
James Bopp, Jr.                               Date
The Bopp Law Firm, P.C.
Terre Haute, Indiana