UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| **The Bopp Law Firm, PC,** an Indiana Professional Corporation<br><br>*Plaintiff,*<br><br>v.<br><br>**True the Vote, Inc.,** a Texas Corporation,<br><br>*Defendant.* | **Civil Case No. 2:23-cv-120** |
| **True the Vote, Inc.,** a Texas Corporation,<br><br>*Counter-Claimant,*<br><br>v.<br><br>**The Bopp Law Firm, PC,** an Indiana Professional Corporation,<br><br>*Counter-Defendant.* | |

**TRUE THE VOTE'S RESPONSES IN OPPOSITION TO THE BOPP LAW FIRM'S
(A) MOTION FOR ENTRY OF DEFAULT JUDGMENT AND
(B) RULE 12(b)(6) MOTION TO DISMISS**

Defendant and Counter-Plaintiff True the Vote, Inc. ("TTV") files its collective response in opposition to the (i) Motion for Entry of Default Judgment, and (ii) Rule 12(b)(6) Motion to Dismiss (collectively, "Motions") filed by Plaintiff and Counter-Defendant, The Bopp Law Firm P.C. ("BLF"). In support of its opposition to the Motions, TTV states the following:

**I. GROUNDS FOR DENIAL**

BLF's motion for entry of default judgment and motion to dismiss TTV's affirmative defenses and counterclaims are ill-conceived. The motion for default is just gamesmanship in which BLF seeks an unearned million-dollar windfall without having to endure proving the merits

1

of its own case, while the motion to dismiss ignores that Rule 15 allows amendment as a matter of course. BLF's Motions merit denial for the following reasons:

1. Because the allegations contained in the Amended Complaint (which simply add another item of attorney work product) do not change the theory or scope of BLF's case alleging TTV owes it money for services rendered, TTV is not required to file a new answer to the Amended Complaint.

2. TTV's original Answer sufficiently put BLF on notice that TTV denies the substantially unchanged allegations asserted in the Amended Complaint.

3. BLF failed to comply with the Standards for Professional Conduct Within the Seventh Judicial Circuit, which provide that an attorney practicing in this Circuit "will not cause any default or dismissal to be entered without first notifying opposing counsel."

4. There is no basis to conclude TTV has waived or abandoned the content of its Answer, Affirmative Defenses, or Counterclaim, and to hold otherwise would be a drastic result not in the interests of justice — particularly where the case has just begun, BLF has claimed no prejudice in having to actually earn its judgment, and TTV may amend its Counterclaim as a matter of course.

5. TTV adequately pleaded fraud and fraudulent inducement.

6. BLF has stooped to gamesmanship, ignoring the Seventh Circuit's directive favoring resolution of disputes based on the merits rather than on hyper-technical pleading issues.

## II. SUMMARY OF PROCEDURAL FACTS

On March 16, 2023, BLF filed a voluminous 67-page original complaint containing 420 paragraphs. (Dkt. 1). The theory and scope of BLF's lawsuit was and remains simply this: *BLF contends TTV owes BLF payment for legal services BLF allegedly provided to TTV in a vast number of cases and matters*. BLF alleges three causes of action to support its claims – all of which sound in breach of contract: (i) breach of contract due to nonpayment for services provided; (ii) stated account; and (iii) quantum meruit. In an effort to support these causes of action, the original Complaint alleges facts pertaining to seventeen (17) matters on which BLF claims it performed legal services for which payment is owed.

TTV timely answered the original Complaint on May 15, 2023. (Dkt. 13). In its 42-page Answer, TTV responded to each allegation in BLF's 420-paragraph original Complaint, as

required under the Federal Rules, largely by denying BLF's allegations. TTV's responsive pleading also included Affirmative Defenses and Counterclaims.

BLF then embarked on the petty, wasteful gamesmanship that characterized its prior representation of TTV, and has already become its *modus operandi* here, sending TTV's counsel a draft Motion for Sanctions and threatening to file it if TTV did not withdraw *all* of its Counterclaims. *See* Exhibit A. The Motion for Sanctions was, of course, itself frivolous because while it pretended to be a Rule 11 motion, (1) BLF could have ascertained during a 10-minute search of Seventh Circuit (or any other) law that a Rule 11 Motion for Sanctions in response to facially valid counterclaims is wildly premature; (2) the Motion applied no relevant portion of Rule 11 to the counterclaims, made no attempt to cite a shred of caselaw, nor to advance or modify it, and, incredibly, *didn't even address the elements* of the supposedly groundless counterclaims; (3) the motion expressly made up its own standards rather than cite to Rule 11's (see top of page 2 and bottom of 7); (4) the motion's factual quibbles made clear it was a disguised motion for premature summary judgment that attempted to evade the rigors of discovery; and (5) the motion was almost entirely devoted to lengthy soliloquies of BLF's version of events (see pages 3-7) and was thus nothing more than a squabble over conflicting factual accounts that one should only expect from a motion for summary judgment or even trial.[1]

---

[1] BLF did not cite a single judicial opinion upholding sanctions based only on a complaint or counterclaim *before* the parties have had "a reasonable opportunity for *further* investigation or discovery" to show that the allegations "*will*" – future tense – "likely have evidentiary support." Rule 11's commentary makes clear:

> The time when sanctions are to be imposed rests in the discretion of the trial judge. However, *it is anticipated that in the case of pleadings the sanctions issue under Rule 11 normally will be determined at the end of the litigation . . .*

Fed. R. Civ. P. 11 (emphasis added). The Seventh Circuit is in accord. *See Kaplan v. Zenner*, 956 F.2d 149 (7th Cir.1992) (holding "the basis for factual allegations in pleadings cannot be determined until such time as the party claiming those facts has had an adequate opportunity to develop his proof") (citation omitted); *see also Birch v. Kim*, 977 F. Supp. 926, 938 (S.D. Ind. 1997) (citing same Committee Notes to hold

3

TTV invested time and resources reviewing and researching the bases for this frivolous motion, and did not withdraw its Counterclaims.[2] BLF, having had its bluff called, then did nothing with its so-called motion for sanctions. But the damage was done.

On June 2, 2023, seventeen days after TTV filed its Original Answer (four days before BLF's deadline to amend without leave), BLF filed an Amended Complaint. (Dkt. 19). Except for minuscule stylistic modifications, the Amended Complaint repeats, *verbatim*, the facts and claims on each of the 17 matters addressed in its original complaint, maintaining the identical causes of action that sound in the contract. The only addition to the original Complaint asserts facts involving legal services that BLF claims it rendered to TTV in connection with a matter referenced as "TTV Donor." *See* Dkt. 19, Amended Complaint at 27-30. The additional facts BLF added, for one matter, do not meaningfully alter the theory of BLF's case that it is owed money, nor do the facts even add additional causes of action. Nor did TTV's Answer give BLF any expectation that TTV would have *admitted* those new allegations had TTV filed an Amended Answer. The Amended Complaint thus remains materially unchanged from the

---

premature Rule 11 motion was "not timely asserted" where "Plaintiff has advanced factual allegations that may only be finally evaluated at trial"); *Cedar Crest Health Ctr., Inc. v. Bowen*, 129 F.R.D. 519, 524 (S.D. Ind. 1989).

Here, BLF's motion for sanctions, as evidenced by its title, "challenges [TTV's] claims on the basis of false factual assertions." That is, it was a motion for summary judgment in frivolous disguise.

[2] Most frivolously, BLF's Motion for Sanctions didn't actually make any arguments under Rule 11. Rather, after making up its own rules for how sanctions work, BLF set the stage for the factual quibbling that takes up the bulk of its Motion, saying none of TTV's allegations "can possibly have evidentiary support, *as evident* [sic] *from the public record*," whatever that may mean. Was BLF threatening to ask the Court to take judicial notice of "the public record" and, based on that record alone, without a record obtained in discovery, to dismiss TTV's claims, not to mention levy sanctions? Clearly, BLF did not ground its argument in *any* existing case law.

No, after issuing its odd invitation for the Court to litigate fresh counterclaims based on BLF's preferred representations of "the public record," BLF simply devoted its entire motion to a fact-intensive rebuttal of TTV's counterclaims.

4

original Complaint that TTV fully answered.

### III. <u>ARGUMENT AND AUTHORITIES</u>

**A. A Default Judgment is Not Appropriate Where Any Default — If it Exists — is "Largely Technical," There Are Many Material Issues of Fact, the Plaintiff is Not "Substantially Prejudiced," and the Effect on the Defendant Would be "Harsh."**

When a party applies for judgment by default, "the district judge is required to exercise sound judicial discretion in determining whether the judgment should be entered." 10A Wright & Miller, *Federal Practice and Procedure* 3d Ed. § 2685 (1998). In determining whether to enter a default judgment, the court may consider a number of factors including whether there is a material issue of fact, whether the default is largely technical, whether the plaintiffs were substantially prejudiced, and how harsh an effect a default judgment might have. *Id*. This circuit favors a policy of promoting a trial based on the merits rather than default judgments. *See Isby v. Clark*, 100 F.3d 502, 1996 WL 656387 (7th Cir. 1996) (holding district court did not abuse its discretion in denying default judgment in spite of oversight of amended answer being years late); *Cracco v. Vitran Express, Inc.,* 559 F.3d 625, 631 (7th Cir. 2009) ("Our cases articulate a policy of favoring trial on the merits over default judgment."); *Sun v. Board of Trustees University of Illinois*, 473 F.3d 799, 811 (7th Cir. 2007) (acknowledging that courts have an interest in deciding cases on the merits rather than resorting to default); *C.K.S. Eng'rs, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984) ("This circuit has a well-established policy favoring a trial on the merits over a default judgment"); *LaPorte Sav. Bank v. Schmidt*, 2012 WL 733691 (N.D. Ind. Mar. 6, 2012) (denying default judgment where the amended answer was only 30 days delayed); *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.,* 433 F. Supp. 2d 933, 2005 WL 4043978 (N.D. Ind. 2005) (denying default judgment where the amended answer was ten weeks delayed, and, as here, plaintiff ignored the Standards of Professional Conduct Within the Seventh

Federal Judicial Circuit).

Here, unsurprisingly, all factors in this nascent case weigh against entering a default judgment. **First**, there are countless material issues of fact: TTV's Answer denied almost every claim in BLF's Complaint. In one of the most egregious disputes, regarding a significant portion of BLF's demand for a default judgment for over $1 million, TTV quite materially alleged in its Counterclaim that BLF had charged TTV a whopping $280,960.90 to file four *nearly identical* cases representing about a week's work — and then dismissed those cases days later because BLF had failed to secure any evidence before filing. *See* TTV's Answer, ¶438. **Second**, if TTV's failure to answer a materially unchanged Amended Complaint is a default at all, it is decidedly a technical one (and one easily remedied, given the passage of only weeks since the deadline for the amended answer). **Third**, BLF has just filed this case, against a former client, and cannot be unduly prejudiced by having to endure the litigation it sought out. **Fourth**, the effect of any default would be unduly harsh, awarding BLF over $1 million in exchange for its gamesmanship even as the case has just reached its starting blocks, notwithstanding TTV's vigorous denials of BLF's claims, TTV's affirmative defenses, TTV's counterclaims and offsets, and TTV's continued prosecution of this case as evidenced by its responses to BLF's motions for default and for dismissal. The Court may now deny the motion for default on these facts alone. But the reasons to deny the default judgment don't end there.

**B. Amended Answers Are Not Required in Response to Amended Complaints That Do Not Materially Alter the Theory or Scope of the Case**

BLF, without even deigning to provide TTV or the Court with a comparison of its original Complaint to its Amended Complaint, bases its motion for entry of default judgment on a conclusory and incorrect presumption that a defendant must always file an amended answer to an amended complaint. Contrary to BLF's presumption, a responsive pleading is not always required

6

when an amended complaint is filed. *See KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 714–16 (9th Cir. 2020); *Aircraft Holding Solutions, LLC, et. al. vs. Learjet, Inc. d/b/a Bombardier Aircraft Services (BAS)*, 2020 WL 6262183, *3 (N.D. Tex. 2020); 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1365, at 142 (3d ed. 2004) (citing Fed. R. Civ. P. 12(b) and explaining that it "reflects the view that a party should not be obliged to interpose her defenses and objections to a claim for relief by motion or answer when she is not required to file a responsive pleading").

There is strong legal support for holding that it is unreasonable and unnecessary to require a defendant to file a new answer to an Amended Complaint when the allegations in the amended complaint are substantially similar to the allegations of the already answered complaint. *KST Data*, 980 F.3d at 714–16 ("Here, the Second Amended Complaint contained the same material allegations with respect to the breach of contract claim as the First Amended Complaint."); *Aircraft Holding,* 2020 WL 6262183 at *3 (noting "plaintiffs represented to the court when seeking leave to file their first amended complaint that the proposed pleading 'does not plead any new or additional causes of action . . . It merely adds facts relevant to the same causes of action Plaintiffs now assert against [Bombardier].").[3] What do courts mean by substantially similar? They mean

---

[3] *See also Nouri v. Cty. of Oakland*, 615 Fed. Appx. 291, 297 (6th Cir. 2015) (failure to file answer to second Amended Complaint did not constitute admissions to facts alleged in that pleading where defendants "denied allegations supporting the visitation claim in their responsive pleading to the first Amended Complaint" and "those allegations are substantially similar to those in the second Amended Complaint."); *LaGorga v. Kroger Co.*, 407 F.2d 671, 673 (3d Cir. 1969) (holding that failure to respond to amended third-party complaint did not result in admissions under Rule 8(b)(6) by third-party defendants when the answer to the original third-party complaint had the effect of denying the crucial allegations in the amended pleading); *Daniel v. DeKalb Cty. Sch. Dist.*, 2013 WL 12095217, at *4 (N.D. Ga. Dec. 23, 2013) ("[W]hen the defendant answers an original complaint and the Amended Complaint makes substantially the same allegations, the denials in the original complaint suffices as a denial to substantially similar averments in the Amended Complaint and in such circumstances, a default judgment is not appropriate."), *rec. adopted*, 2014 WL 12519801 (N.D. Ga. Feb. 26, 2014), aff'd, 600 Fed. Appx. 632 (11th Cir. 2014); *Peak v. ReliaStar Life Ins. Co.*, 2018 WL 6380772, at *2 (N.D. Ga. Sept. 28, 2018) (holding it generally established that "[t]he failure to deny the ... allegations in an Amended Complaint does not constitute an admission pursuant to

that neither the theory of the case nor its scope has been meaningfully altered by the amended complaint in such a way that the complainant has suffered either prejudice or doubt about its opponent's intentions.

In *KST Data*, one of the defendants, Enterprise Services, LLC ("ES"), raised its affirmative defenses in its answer to KST's complaint and first Amended Complaint, but did not file an answer to KST's second (and final) Amended Complaint. *Id.* at 711. The Ninth Circuit reversed the lower court's ruling that ES's failure to file an answer to the second amended complaint resulted in a waiver of its affirmative defenses and expressly held that "A defendant is not required to file a new answer to an Amended Complaint when the allegations in the Amended Complaint do not 'change the theory of scope of the case.'" *Id*. at 714-716 (citation omitted). In so holding, the Ninth Circuit followed the reasoning of previous courts in *Stanley Works v. Snydergeneral Corp.*, 781 F. Supp. 659, 664–65 (E.D. Cal. 1990) and *Upek, Inc. v. Authentec, Inc.*, No. 10-424-JF-PVT, 2010 WL 2681734, at *3 (N.D. Cal. July 6, 2010). These district courts concluded that the defendant may file a new answer if the amended complaint "makes allegations that change the theory or scope of the case." *Stanley Works*, 781 F. Supp. at 665. But when an amended complaint "does not add new parties, new claims, or significant new factual allegations, . . . the previously filed response to the original pleading [will] suffice. *Uptek*, 2010 WL 2681734 at *3, *quoting Kraft v. Arden*, No. CV 07-487-PK, 2009 WL 73869, at *7 (D. Or. Jan. 8, 2009)). The Ninth Circuit in *KST Data*, accordingly, held that ES did not waive its affirmative defenses by not filing an answer to the second Amended Complaint, and that ES was not required to respond and reassert its affirmative defenses to KST's second Amended Complaint because ES had already asserted those affirmative defenses in response to the same breach of contract claim in the first Amended Complaint. *Id*. at

---

[Rule 8(d)] where the original complaint contained substantially the same allegations and the defendant denied them in the answer to that complaint.") (citing cases).

715-716.

Similarly, the court in *Aircraft Holding,* 2020 WL 6262183 at *3, addressed the very procedural issues involved in this case. The amended complaint there, like BLF's, added additional facts, but did not plead any new or additional causes of action as to the existing defendants. *Id*. at *2. Unlike BLF's amended complaint, Aircraft Holding's even added a new party. But while the defendants had filed an answer to the plaintiff's original pleading, they, like TTV here, did not see a need to respond to the amended complaint. Five hundred and eighty-two (582) days after their Rule 15(a)(3) deadline to amend expired, and 603 days after the deadline to amend in the scheduling order had expired, defendants sought leave to amend their answer. *Id*. at *2. Plaintiffs responded by requesting an entry of default judgment on the basis that defendants did not timely file their answer to plaintiffs' Amended Complaint.

In spite of the defendants' lengthy delays, the *Aircraft Holding* court found that a default judgment would be improper. Why? Because, like BLF's amended complaint, the amended complaint there *did not include* any *new or additional causes of action*, *but merely added facts relevant to the same causes of action asserted in the original complaint*. *Id*. at *3. The court there agreed with the discretion exercised by the court in *Barrow v. Greenville Indep. Sch. Dist.*, 2005 WL 8158037, at *1 (N.D. Tex. Feb. 23, 2005), which held that a defendant's failure to answer a second amended complaint did not entitle the plaintiff to default judgment because the plaintiff "was aware, despite the absence of an answer, that [defendant] denied the allegations of her second Amended Complaint and opposed the relief she sought," and "[j]ustice would require under the circumstances ... that the court grant [defendant] leave to amend to deny the allegations of [plaintiff]'s second amended complaint that she has long known are contested." Accordingly, the *Aircraft Holding* court denied plaintiffs' motion for entry of default judgment and granted the

9

defendant's motion for leave to amend their answer.

Similarly, in *Wolf Lake Terminals*, 433 F. Supp. 2d 933, even though the defendant filed its answer *ten weeks late*, the court denied the plaintiff's motion for default judgment because the motion violated the Standards for Professional Conduct Within the Seventh Judicial Circuit, and because the plaintiff could show no prejudice. *See also Clay v. Consol Pennsylvania Coal Co., LLC*, 2013 WL 4830746 (N.D.W. Va. Sept. 10, 2013) (denying entry of default because "strong public policy favors resolving disputes on the merits and not by default judgment"; quoting *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 172 (2d Cir. 2001)); *Prelov v. G.D. Searle & Co.*, 621 F.Supp. 1146, 1147 (D.Md.1985) (stating that the court denied the plaintiff's motion for default judgment in the absence of any showing of prejudice as a result of the delay in the defendant filing its answer); *Mason & Hanger–Silas Mason Co. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir.1984) (approving district court that "in its discretion decided that a default judgment, generally disfavored in the law, should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement").

Here, too, BLF is aware that TTV denied its allegations and opposes the relief it seeks. And even more so here, justice would require leave to amend before any precipitous, and unearned, default judgment of over $1 million.

### C.  TTV's Original Answer, to Say Nothing of its Counterclaims, Put BLF on Notice that TTV Denies the Substantially Similar Allegations in the Amended Complaint

BLF, in asking this Court to rescue it from TTV's 456 paragraphs of clear denials and opposition to BLF's claims (*see* TTV's Answer, Affirmative Defenses, and Counterclaims) solely because TTV didn't respond to its additional allegations, appears not to appreciate that "[t]he purpose of a responsive pleading is to put everyone on notice of what the defendant admits and what it intends to contest." *Edelman v. Belco Title & Escrow, LLC*, 754 F.3d 389, 395 (7th Cir.

10

2014). Where TTV vigorously contested BLF's entire, 420-paragraph Complaint, BLF is clearly on notice about what TTV will admit and what it will contest.

Moreover, as the Supreme Court has made clear, "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that ***the purpose of pleading is to facilitate a proper decision on the merits***." *Conley v. Gibson*, 355 U.S. 41, 48 (1957) (emphasis added). In *Edelman* and *Isby v. Clark*, 100 F.3d 502 (7th Cir. 1996), among others, the Seventh Circuit has signaled that it refuses to deem facts in amended complaints as admitted where the plaintiffs were on notice that the defendants denied the allegations in the amended complaint. Both courts have repeatedly held that refusing to deem facts in an unanswered complaint as admitted was "clearly a no harm, no foul situation." *Edelman*, *citing Isby*, 100 F.3d at 504 (finding no abuse of discretion in the district court's not imposing a default judgment against defendants who failed to file a new answer after the plaintiff amended his complaint). *See also Aircraft Holdings* at *3 ("The purpose of a responsive pleading is to put the plaintiff on notice of what the defendant admits and what it intends to contest"); *GLF Constr. Corp. v. Dall. Area Rapid Transit Auth.*, 2012 WL 12882075, at *1 (N.D. Tex. Mar. 7, 2012) ("[T]he purpose of an answer is to provide notice of defenses to each claim and to admit or deny each allegation asserted." (citing Rule 8(b)(1))).

In the present case, BFL is clearly on notice that TTV denies the entire theory and scope of the allegations in the Amended Complaint. TTV thoroughly responded to BLF's allegations by answering the allegations set forth in BLF's rather excessive 69-page Complaint. That TTV did not file an answer to an Amended Complaint that added no new parties or causes of action does not justify entry of default, particularly where leave to amend at such an early stage is so readily available.

**D. BLF Failed to Comply with the Seventh Circuit's Standard of Professional Conduct**

In furtherance of its policy against default judgments, the Seventh Circuit's "Standards for Professional Conduct Within the Seventh Judicial Circuit" expressly require that attorneys practicing in this Circuit "will not cause any default or dismissal to be entered without first notifying opposing counsel." *See* "Standards of Professional Conduct Within the Seventh Federal Judicial Circuit" at 2.[4] In direct violation of this rule, BLF failed to first notify TTV's counsel prior to seeking a default judgment. This was all part of BLF's unnecessary gamesmanship — BLF knew if it gave notice of an intent to seek default, TTV could have submitted an only slightly delayed amended answer before BLF's motion for default — and ought not to be encouraged or rewarded.

**E. BLF has not waived or abandoned its affirmative defenses**

In an attempt to support its motion to dismiss TTV's counterclaims, BLF relies on policy articulated by a different circuit – the Federal Circuit – for a different circuit – the Eight Circuit. *General Mills, Inc. v. Kraft Foods Global, Inc.,* 487 F.3d 1368; *reh'g aff'd*, 495 F.3d 1378 (Fed.Cir. 2007). BLF also neglected to inform the Court that, in *General Mills*, unlike in the present case, the amended complaint clearly and significantly *expanded the theories and scope of the case* by adding an entirely different species of legal complaint — a breach of contract claim — to the previously asserted patent infringement claims. Moreover, in *General Mills,* by the time the court considered the matter, the defendant had already moved for summary judgment on its counterclaim, and then, initiating a matter of first impression, the defendant misunderstood applicable to deadlines to move to dismiss the plaintiff's amended complaint rather than answering it. *Id* at 1373, 1376. Accordingly, *General Mills* is distinguishable from the facts in the present

---

[4] https://www.wied.uscourts.gov/sites/wied/files/documents/Standards_Professional_Conduct.pdf

12

case, and reflects the policy judgments of other circuits that contradict those of the Seventh Circuit. Most importantly, the *General Mills* Court of Appeals held only that the district court had not abused its discretion – not that this Court has none.

Indeed, some courts have exercised the wisdom of their discretion to hold that a defendant is *never* required to replead a counterclaim in response to an Amended Complaint. In *Dunkin' Donuts, Inc. v. Romanias,* 2002 WL 32955492, at *2 (W.D.Pa. May 29, 2002), the court reasoned, "Rule 13, which governs counterclaims, requires only that a counterclaim be set forth in a pleading — *it does not mandate that it be contained in an answer*. See Fed.R.Civ.P. 13(a)-(f). Further, an answer responds to allegations in a complaint, *a counterclaim is something independent*. Revisions to a complaint do not require revisions to a counterclaim.") (emphases added).

Most courts have taken a sensible functional approach, weighing equitable considerations, including a defendant's manifestations of intent, whether the plaintiff was on notice of the defendant's continued pursuit of the counterclaim, and the prejudice to the plaintiff if the claim is allowed to proceed[5]. Similarly, some courts have, in the interests of justice, granted a defendant leave to essentially retroactively replead a counterclaim avoiding the catastrophic penalty of holding the original counterclaim to have been abandoned. *See Cairo Marine Serv., Inc. v.*

---

[5] *See, e.g., Davis,* 2014 WL 916947 *4; *Ground Zero Museum Workshop v. Wilson,* 813 F.Supp.2d 678, 705–706 (D.Md.2011) (allowing counterclaims to proceed because they were "indisputably at issue for the majority of the discovery period" and defendant "repeatedly took actions to indicate his intent to pursue the counterclaims," including defending against plaintiffs' motion to dismiss the counterclaims and moving to amend them, and concluding plaintiffs "failed to conduct discovery regarding the claims at their own peril"); *Hitachi Med. Sys. Am., Inc. v. Horizon Med. Grp.,* 2008 WL 5723531, at *4–5 (N.D.Ohio Aug.29, 2008) (plaintiff was on notice of contents of counterclaim which had not changed since initial filing, parties had every opportunity to conduct discovery, plaintiff failed to identify any prejudice, defendant's failure to replead counterclaim was inadvertent, and defendant would be prejudiced if counterclaim was struck); *see also Mullins v. Med. Lien Mgmt., Inc.,* 2013 WL 5397412 (Colo.App. Sept. 26, 2013) (finding *Ground Zero* persuasive and evaluating equitable considerations).

*Homeland Ins. Co. of New York,* 2010 WL 4614693, at *1 (E.D.Mo. Nov.4, 2010) (granting defendant leave to amend answer where plaintiff had notice defendant intended to pursue counterclaim because original answer included specific reference and plaintiff would not be unduly prejudiced). Here, as TTV's instant briefing shows, TTV has manifested no intent to abandon its answer, affirmative defenses, or counterclaims; BLF remains on notice that TTV intends to continue to pursue its counterclaims; and BLF has not even purported to suffer any prejudice if the case is allowed to proceed.

Only a few courts have found that equitable considerations weighed against allowing a counterclaim to proceed or allowing the defendant to retroactively replead it, but they did so in materially different circumstances. *See Johnson,* 228 F.Supp.2d at 1079 (denying leave to replead a counterclaim where trial setting was imminent, all of the claims in the Amended Complaint were subject to summary judgment, and defendant had never filed an answer to the Amended Complaint); *Bremer Bank, Nat. Ass'n v. John Hancock Life Ins. Co.,* 2009 WL 702009, at * 12 (D.Minn. March 13, 2009) (holding counterclaim failed as a matter of law but commenting, "[f]rom a practical standpoint, [defendant's] failure to replead the counterclaim, together with nearly two years passing without discovery or any action on the counterclaim casts doubt on whether the counterclaim was ever viewed as meritorious").

After assessing case authorities on all sides of the issue, the court in *Davis v. Beaird,* 2014 WL 916947 (E.D. Mo. Mar. 10, 2014), consistent with the Seventh Circuit's own policy and the Supreme Court's admonition to reject gamesmanship in favor of decisions on the merits, found that "[g]iven the ambiguity in the Federal Rules of Civil Procedure with regard to whether a counterclaim must be replead, the Court declines a formalistic interpretation of Rule 15(a)(3) and finds that equitable considerations weigh in favor of allowing [the defendant] to proceed with his

Case 2:23-cv-00120-JRS-MG   Document 29   Filed 07/14/23   Page 15 of 20 PageID #: 1527

counterclaim." *Id*. at *4.

Likewise, in the present case, there are no equitable considerations favoring a default judgment weeks after BLF filed its Amended Complaint, while the equities weigh heavily against such a drastic result where BLF has yet to prove any of the merits of its case. Indeed, to the extent BLF's claim lack merit, the Court would create moral hazard by awarding BLF its entire demand, without proof or discovery, on the basis of easily remedied technicalities.

**F. The Federal Rules Reject Pleading Games Based on Technicalities and Strongly Favor a Proper Decision on the Merits**

As the Seventh Circuit has emphasized in similar circumstances, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Edelman*, 754 F.3d at 389, *citing Conley v. Gibson,* 355 U.S. 41, 48 (1957), *quoted in Pepper v. Vill. of Oak Park,* 430 F.3d 805, 812 (7th Cir. 2005). Indeed, in *Pepper*, the Seventh Circuit upheld a grant of summary judgment against the plaintiff despite the defendant's failure to file an answer responding to a new, related claim in the plaintiff's Amended Complaint.

**G. TTV Has Alleged Sufficient Facts Putting BLF on Notice of Claims of Fraud, But BLF Would Also Suffer No Prejudice If TTV Were Given Leave to Amend**

Rule 9(b) of the Federal Rules of Civil Procedure requires plaintiffs to plead the "who, what, when, where, and how: the first paragraph of any newspaper story," regarding "circumstances constituting fraud." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). The Seventh Circuit, however, interprets Rule 9(b) with flexibility, recognizing that "much knowledge is inferential." *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009) (holding that a complaint alleging "the promise, the intent not to keep that promise,

15

and the details of nonconformity" was sufficient "to narrate, with particularity, the circumstances that violate[d the FCA]"); *see U.S. ex rel. Upton v. Fam. Health Network, Inc.*, 900 F. Supp. 2d 821, 833 (N.D. Ill. 2012) (Relators' "inability to provide the certifications' dates, identification numbers, or verbatim content does not preclude them from adequately pleading a false claim.").

Accordingly, Rule 9(b) does not act as a rigid bar to pleading circumstances constituting fraud for plaintiffs with less than perfect knowledge. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he district court was incorrect when it suggested that [plaintiff] need[ed] to point to specific misrepresentations made by particular [employees of defendant]."); *see Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998) ("We don't want to create a Catch–22 situation in which a complaint is dismissed because of the plaintiff's inability to obtain essential information without pretrial discovery...that she could not conduct before filing the complaint. But Rule 9(b) is relaxed upon a showing of such inability."). Courts have attributed the leniency of Rule 9(b) to the vast differences of fact that exist amongst allegations of fraud. *See In re HealthCare Compare Corp. Secs. Litig.*, 75 F.3d 276, 285 (7th Cir. 1996) (Ripple, J., dissenting) (noting that reasonable minds can and will differ on the adequacy of a given fraud averment); *see Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993) ("What constitutes 'particularity' will necessarily differ with the facts of each case....").

BLF complains that TTV has not pleaded fraud with sufficient particularity, but its argument curiously quotes only from the traditionally generalized language of TTV's *Counts*, *see* Brief in Support of Motion to Dismiss at 3, and ignores the fraud pleaded in TTV's more extensive "Facts" section at pages 44-48 of TTV's Answer, Counterclaim, and Affirmative Defenses. In the Facts section that BLF pretended did not exist, TTV put BLF on notice that it will be seeking

relief for numerous fraudulent behaviors. For example: "In 2020, BLF *inappropriately misrepresented itself* as the general counsel for TTV in business dealings, during meetings with donors, and at public media events, a term not discussed or approved by TTV and outside the scope of the agreements in place between the parties." Answer, ¶435 (emphasis added). This allegation sufficiently puts BLF on notice that it will be defending a claim of fraudulent misrepresentation in repeated instances, and that is all that Rule 9(b) requires. Similarly, TTV also alleged egregiously fraudulent behavior by BLF as follows:

> Federal cases were filed on behalf of TTV based on BLF's self-proclaimed subject matter expertise, legal advice and assurances of BLF, of which TTV relied. The legal fees for filing cases in the four states of Georgia, Michigan, Pennsylvania and Wisconsin totaled $280,960.90. Within one week after the filings, BLF retracted its advice to TTV and recommended these claims be voluntarily dismissed. No fees were reimbursed to TTV.

*Id*., ¶438. TTV did not include the dates of BLF's bogus efforts, for those are well within BLF's knowledge. Similarly, TTV also alleged that BLF "*regularly falsely proclaimed* to third parties that TTV was not timely on paying its legal fees." *Id*., ¶439 (emphasis added). And yet again, TTV alleged that "BLF *used its position as a trusted advisor* and approached a donor to provide a $1.8 million note to TTV specifically for legal fees *without TTV's approval*." *Id*., ¶441 (emphases added). TTV also alleged: "On November 26, 2020, TTV drafted a letter and asked BLF by phone call to review the draft and if appropriate, deliver the correspondence. The phone call was less than 60 minutes in duration. *BLF invoiced $9,044.01 for the review of this letter*." *Id*., ¶446 (emphasis added). TTV also included the following allegations of fraudulent inducement:

> 447. In 2017, BLF *misrepresented* to TTV the timing, costs and reasonable outcomes of the True the Vote, Inc. v. Internal Revenue Service, Case No. 1:13-cv-00734, *claiming* that if TTV would retain BLF to represent TTV in this matter, *it would cost approximately $50,000* and take no more than thirty days. In reliance of this, TTV dismissed prior counsel and retained BLF as counsel of record. This case is ongoing, and the fees accumulated by BLF are purported to be $505,003.38.

17

   448. On or about October 20, 2020, BLF recommended TTV engage BLF to file an amicus brief and motion for leave to file an amicus brief on behalf of TTV in support of the plaintiffs in Wise, et al v. Circosta, et al., No. 20A71 (U.S.). In reliance of BLF's statements and assurances of the reasonableness of the legal outcomes, TTV retained BLF. ***BLF repurposed an amicus brief it had previously filed and lost in Montana which was based on the same legal arguments.*** The application was rejected on October 8, 2020. ***BLF invoiced $19,847.00 for submitting an application.*** TTV did not review or receive any work product related to this invoice and was not informed by BLF as to the status of the application.

 (Emphases added).

Should the Court wish greater clarity in these claims of fraud and fraudulent inducement, TTV requests that the Court grant it leave to add even more specifics. During the drafting of TTV's counterclaims, TTV's Executive Director and sole employee was on a weeks-long personal pilgrimage across Spain that made full collaboration on factual allegations a challenge.

## IV. <u>CONCLUSION</u>

Based on the foregoing authorities, TTV's answer, affirmative defenses, and counterclaim filed in response to BLF's original complaint should stand in response to BLF's substantially similar Amended Complaint. Moreover, TTV has not waived its affirmative defenses and counterclaims against BLF. They remain viable claims and defenses.

Nevertheless, should the Court determine an amended pleading is required to preserve TTV's answers, affirmative defenses, and counterclaim, TTV requests leave to file a new answer in response to BLF's Amended Complaint. Given the total lack of prejudice to BLF, the Court would be well within its discretion to avoid a hyper-technical dismissal at the beginning of a case. In accordance with this Court's local rules, TTV's alternative motion for leave to amend is separately filed, concurrent with this response.

Dated: July 14, 2023

        Respectfully submitted,

        GREGOR WYNNE ARNEY, PLLC

        /s/ *Michael J. Wynne**
        Michael J. Wynne
        Texas State Bar No. 00785289
        SDTX No. 18539
        909 Fannin, Ste. 3800
        Houston, Texas 77010
        Telephone: 281-450-7403
        Email: mwynne@gwafirm.com

        *\*Pro Hac Vice*

        */s/ John J. Morse*
        John J. Morse
        Attorney No. 16146-49
        Morse & Bickel, P.C.
        1411 Roosevelt Ave., Ste. 102
        Indianapolis, IN 46201
        Telephone: 317-686-1540
        Facsimile: 317-630-2790
        Email: Morse@MorseBickel.com

    COUNSEL FOR TRUE THE VOTE, INC.

## CERTIFICATE OF SERVICE

I certify that on July 14, 2023, I caused to be served on all counsel of record the foregoing and all exhibits and attachments thereto in the above-captioned matter to be filed with the United States District Court for the Southern District of Indiana, Terre Haute Division, using the Court's CM/ECF system, including

<div style="text-align:center">
Mr. James Bopp, Jr.<br>
Lead Counsel for<br>
The Bopp Law Firm<br>
1 South Sixth Street<br>
Terre Haute, Indiana 47807-3510
</div>

/s/ *Michael Wynne*\*  
Michael Wynne  
*\*Pro Hac Vice*  
Counsel for True the Vote