**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**TERRE HAUTE DIVISION**

| | |
|---|---|
| **The Bopp Law Firm, PC**, an Indiana professional corporation<br><br>*Plaintiff*,<br><br>*v.*<br><br>**True the Vote, Inc.**, a Texas Corporation,<br><br>*Defendant.* | |
| **True the Vote, Inc.**, a Texas Corporation,<br><br>*Counter Claimant*,<br><br>*v.*<br><br>**The Bopp Law Firm, PC**, an Indiana professional corporation,<br><br>*Counter Defendant.* | Civil Case No. 2:23-cv-120-JRS-MG |

# BLF's Reply Supporting Its Application for Entry of Default by Clerk and Response Opposing TTV's Motion for Leave to Amend Answer and Counterclaims[1]

### Introduction: TTV's Key Admission

TTV makes a key admission that generally negates the arguments it puts forward in its

opposition arguments. In TTV's Amend Motion, it admits that "TTV made a conscious decision

not to expend valuable resources responding to BLF's Amended Complaint[2] . . . ," *id*. at 1, based

---

[1] True the Vote, Inc. ("**TTV**") filed a Response in Opposition to the Bopp Law Firm's (A) Motion for Entry of Default Judgment and (B) Rule 12(b) Motion to Dismiss (ECF 29) ("**Default Resp.**") and its Motion for Leave to Amend Answer and Counterclaim (sic) in the Interest of Justice (ECF 30) ("**Amend Motion**"). The Bopp Law Firm, PC ("**BLF**") (**1**) replies in support of its Application for Entry of Default by Clerk (ECF 26) ("**Default Application**"), responding to TTV's Default Response, and (**2**) responds in opposition to TTV's Amend Motion. TTV combines responses to (i) the default application and (ii) the Rule 12(b)(6) dismissal motion, but this Reply addresses only the former.

[2] Verified Amended Complaint for Compensatory Damages and Relief in Quantum Meruit (ECF 19) ("**Amended Complaint**").

on advice of counsel that it need not, *id.* at 2 ("**Key Admission**"). TTV says counsel determined the Amended Complaint didn't change the cases's theory or scope, "the two primary factors that counsel determined, via research, would be controlling," *id.*, so TTV "was not required to file a new answer," *id*. TTV says its save-money decision not to file was "reasonable." *Id*.

So there was no confusion about deadlines, inadvertent oversight, or the like to possibly invoke justice concerns or show excusable neglect. Furthermore, TTV's Default Response provides no controlling authority authorizing TTV, this Court, or this Court's clerk, to ignore the plain language and prescribed function of Federal Rules of Civil Procedure 15(a)(3) (time for any required response to amended pleading) and 55(a) (clerk must enter default), especially when a party *consciously chooses not* to plead. Default Resp. 6-10. Whether TTV's save-money choice was "reasonable," turns on the reliability of counsels' research and decision, both of which are doubtful. But whether or not that was reliable, TTV chose not to answer and admits it now. So absent controlling authority that authorized TTV not to file an amended answer, let alone by a conscious decision not to do so to save money, the Rules should control. BLF's Default Application should be granted and default should be entered against TTV.

TTV's advice-of-counsel argument has two further problems. First, TTV cites no authority for an advice-of-counsel exception to the application of the Rules regarding answering and default. Compare the law imposing a tax on foundation managers who agree to "an expenditure, knowing that it is a taxable expenditure . . . unless such agreement is not willful and due to reasonable cause," 26 U.S.C. § 4945(a)(2), from which tax managers are protected if "after full disclosure of the factual situation to legal counsel . . . [they] rel[y] on the advice of such counsel expressed in a reasoned written legal opinion that an expenditure is not a taxable expenditure under § 4945." 26 C.F.R. § 53.4945–1(a)(2)(vi). The regulation expressly defines "reasoned" as

meaning that the written legal opinion does not merely "recite the facts and express a conclusion," but "addresses itself to the facts and applicable law." *Id.* TTV doesn't establish that any such exception applies to default at all. Second, even if such an advice-of-counsel exception applied here, TTV doesn't provide the Court the "reasoned written legal opinion" that "addresses itself to the facts and applicable law." TTV's Default Response demonstrates that, if such an opinion existed, it wasn't reasoned since it did not identify clear, controlling authority that TTV could avoid default under the Rules by not answering the Amended Complaint. So TTV's attempted advice-of-counsel argument fails.

### I. Purported Grounds for Denial of the Default Application

TTV lists purported reasons for denying the Default Application, Default Resp. 2, which are addressed in Part III (but not regarding counterclaims as those are addressed separately).

Preliminary, note TTV's use of pejorative argument by adjective and accusation. For example, in just one paragraph in its Default Response where TTV for the first time addressed BLF's Complaint, TTV repeatedly argues by accusation, alleging "petty, wasteful gamesmanship,"[3] which "has already become its *modus operandi* here," because BLF simply followed the plain language of Rules 15 and 55. Default Resp. 3. This accusation is repeated

---

[3] "Gamesmanship" is apparently erroneously derived by TTV from its quotation from *Conley v. Gibson*, 335 U.S. 41 (1957), *abrogated by Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), to the effect that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'" Default Resp. 11 (quoting *Conley*, 335 U.S. at 48) (bold italics omitted). But that quote is about the *purpose* of pleading, not about whether a default is proper when the requirements of Rule 55(a) are met. And a defendant's conscious choice not to answer an amended complaint is not a misstep by counsel (e.g., confusion or inadvertence) that excuses a defendant from application of Rule 55(a) in accordance with its plain language. TTV's pejorative "Gamesmanship" accusation connotes "questionable expedients" and "the use of ethically dubious methods to gain an objective," *Gamesmanship*, *Merriam-Wester Dictionary*, (Aug. 2, 2023, 12:12 PM), www.merriam-web-ster.com/dictionary/gamesmanship, which is neither what the High Court meant in *Conley* nor what BLF did by simply following the plain language of Rule 55(a).

throughout. *See Id*. 2 ("stooped to gamesmanship"), 6, 12, 14. And, in just this one paragraph, TTV repeatedly argues by adjective or accusation: "pretended," "incredibly," "made-up," "factual quibbles," "disguised," "attempted to evade," "lengthy soliloquies," "squabble," and "bluff," *Id.* 3-4, which is repeated throughout. TTV also said BLF's legal services were "unearned," *id.* at 1, 10, and it was seeking a "windfall," *id.* at 1; characterized a document never filed and so *not* a motion as a "frivolous motion," *id.* at 4; *see also id.* 3-4 (other allegations of "frivolous"); "BLF also neglected to inform the Court," *id*. at 12; "BLF pretended [that the Facts section] did not exist," *id*. at 16. To top TTV's pejorative arguments off, it states "the Court would create a moral hazard" by not ruling for TTV. *Id*. at 15. Pejorative argument by adjective and accusation does not make a legal argument stronger—instead, it hinders reasoned legal analysis.

## II. Summary of Procedural Facts

In addition to its arguments by adjective and accusation and other errors, TTV's "summary of procedural facts" adds irrelevant material, *id.* at 3-4. TTV spends over a page on a draft "Motion for Sanctions," which BLF notified TTV of before filing as required by Rule 11—BLF never filed this motion and so it is not before this Court, and therefore it is not a proper part of any "summary of procedural facts." TTV inserts this irrelevant material in an effort to illustrate "frivolous," "petty, wasteful gamesmanship," Default Resp. 3—the theme of TTV's argument by accusation. TTV's criticisms of the draft Motion for Sanctions are readily answered by the facts that (I) drafts are developed before filing and (ii) it couldn't be premature when never filed. But BLF won't further burden the Court regarding this irrelevant matter.

## III. Argument and Authorities

TTV's arguments and authorities in response to BLF's Default Application, Default Resp. 5-

12, are addressed seriatim.

## A.  A default judgment is appropriate.

TTV says "a default judgment is not appropriate." *Id.* at 5. But a default judgment is appropriate. BLF timely filed its Amended Complaint on June 2, 2023, and Federal Rule of Civil Procedure 15(a)(3) gave TTV until June 16, 2023, to file an amended answer: "(3) *Time to Respond.* Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Here, a "response to an amended pleading" was "required," since an amended complaint supersedes any prior complaint and becomes the operative complaint, *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016); *see also Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), and a defendant is required to answer a complaint, Fed. R. Civ. P. 12(1)(A). As a result, a defendant is then required to answer the superseding amended complaint and Rule 15 provides the timeline for that required response.[4]

Rule 55 prescribes what can happen when an amended answer is not filed:

> (a) **Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
>
> (b) **Entering a Default Judgment.**
>
> (1) *By the Clerk*. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or

---

[4] Furthermore, the Motion to Continue Pre-Trial Conference (ECF No. 21) which was "concur[ed] in" by TTV, *id.* at ¶¶ 9, recited TTV's duty to file an answer to the Amended Complaint and its specific due date: "The Defendant's answer to that Amended Complaint is not currently due until June 16, 2023, which date is subject to extension." *Id.* at ¶¶ 5-6.

incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:

    (A) conduct an accounting;

    (B) determine the amount of damages;

    (C) establish the truth of any allegation by evidence; or

    (D) investigate any other matter.

So Rule 55 permits BLF here to file for either (i) just a "default," under Rule 55(a), or (ii) a default under Rule 55(a) *and* a "default judgment," under Rule 55(b)(1) or (b)(2). BLF opted to only file for a default under Rule 55(a), Default Application 1, which "the clerk must enter," where a party has "failed to plead or otherwise defend," "shown by affidavit or otherwise." BLF's Default Application was filed on June 30, 2023, two weeks after the deadline for TTV's unfiled amended answer which was established by affidavit. Decl. in Support of Entry of Default (ECF No. 26-1). So by Rule, the clerk is obligated to enter default.

Rules 15(a)(3) and 55(a) were in place when TTV decided not to answer the Amended Complaint, so TTV knew that it risked the entry of default if it didn't answer. Yet it consciously decided not to do so. TTV needed clear, controlling authority that it could choose not to answer *and* avoid default, especially in the Key Admission context. Absent such authority, choosing not to answer assumed the risk and consequence of the entry of a required clerk default.

But TTV's Default Response provides no controlling authority excusing it from complying with Rule 15(a)(3), let alone *any* authority authorizing it to not answer to save money based on counsel advice. Default Resp. 6-10. Nor would such missing authority be *likely* to exist because, where a party intentionally assumes the risk and consequence and risk being only entry of

default. under Rules 15 and 55 of a clerk's default, the do-justice interests behind the cases TTV cites, such as confusion, inadvertence, or inability, are missing. The closest TTV comes to an excuse is saying a personal pilgrimage by TTV's Executive Director "made full collaboration on factual allegations a challenge." *Id*. at 18. But that doesn't establish inability and could have been easily solved by a motion for an extension of time to answer.

As to the fraud "specifics" at issue there (briefed separately), TTV claimed "a challenge," not impossibility. Default Resp. 18. That "challenge" involved pleading fraud, not answering the Amended Complaint.

Nor does "saving money" rise to the level of an excuse where TTV didn't plead that it lacked money, only that it chose to save money—though it presumably paid counsel to research not filing an amended answer instead of just making the minor changes TTV says would be required to make an amended answer. *See, e.g.*, Default Resp. 4 (few changes to Amended Complaint); *id.* at 6 (not filing "easily remedied"). And, of course, that is true. BLF's original Verified Complaint for Compensatory Damages and Relief in Quantum Meruit (ECF 1) ("**Complaint**") had 44 Counts and 420 paragraphs. The Amended Complaint added two new Counts in 32 paragraphs, *id*. at ¶¶ 178-194, 436-450, and the original 44 Counts were unchanged.[5] So TTV had no justification for refusing to answer.[6]

---

[5] The two new Counts, however, differed in kind from the original. The new Counts involved, for the first time, a case where both TTV and BLF were sued by a disgruntled donor to TTV and TTV signed a retainer agreement to pay BLF's attorney fees for defending itself and an Indemnity Agreement to reimburse BLF for any damages incurred as a result of that suit. TTV, however, refused to pay some of BLF's attorney fees incurred defending itself themselves and damages to BLF that resulted from the suit. *See generally* Am. Compl. ¶¶ 178-194.

[6] Ironically, TTV's choice not to answer, even though very simple and inexpensive to have done so, has generated the predictable result—a default judgment request followed by multiple briefs and motions to avoid default and responses and replies thereto—a much more costly exercise by the attorneys for both sides and requiring the Court to also expend its limited resources. All because of TTV's choice to not follow the Rules.

Turning from the controlling authority TTV fails to provide to what it does argue, TTV questions whether a default even "exists.' Default Resp. 5. But BLF established that in compliance with Rule 55(a). *See* Decl. in Support of Entry of Default (ECF 26-1). And TTV provides no controlling authority saying it need not answer. So the default exists.

TTV, however, makes the general-*policy* argument that the Seventh Circuit "favors a policy of promoting a trial based on the merits rather than default judgments." Default Resp. 5. But a preference-policy doesn't abrogate Rules 15 and 55, preclude entry of default, or settle the precisely focused issue here. So a general preference can't control specific cases. And the propriety of a default here turns on this specific situation where TTV consciously *chose* not to answer the Amended Complaint. TTV identifies no case addressing that situation, and BLF is unaware of any. So here and later, the general preference doesn't control.

TTV argues *factors* to consider when courts, not clerks, consider a default *judgment*. Default Resp. 5-6. But BLF has only applied to the *clerk* for entry of *default* under Rule 55(a), which only requires the affidavit that BLF supplied,[7] not a default *judgment* from the *court* under Rule 55(b)(2). Thus a court-ordered default judgment is not yet at issue and matters relating to that should await an application for default judgment. So for both reasons, factors that apply under Rule 55(b)(2) should not be considered regarding BLF's Rule 55(a) application.[8]

But in the alternative, if the Court considers such factors, those don't aid TTV. First, TTV

---

[7] Clerks in the Southern District of Indiana do enter default under Rule 55(a). *See, e.g., Joe Hand Promotions, Inc. v. Abrell*, No. 1:10-CV-0450-TWP-DML, 2011 WL 2066715, at *1 (S.D. Ind. May 25, 2011).

[8] TTV repeatedly confuses and conflates seeking a default under Rule 55(a) from the clerk, which is the only Rule 55 matter raised in BLF's Default Application, with seeking a default judgment under Rule 55(b). *See, e.g.*, Amend Mot. 2 (BLF "asks for drastic remedies, including a $1 M default"); Default Resp. 6 ("BLF's demand for a default judgment for over $1 million"). These Rules have different standards and should not be conflated, and TTV's arguments against a default judgment are irrelevant and should be disregarded.

claims factual issues based on Answer denials. Default Resp. 6. But that assumes that Answer wasn't superseded by the Amended Complaint. "An amended pleading ordinarily supersedes the prior pleading" and a new responsive pleading is thus compelled. *Int'l Greenhouse Contractors, Inc. v. Redden*, No. 114CV01229RLYMJD, 2016 WL 1183761 (S.D. Ind. Mar. 28, 2016) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 736 (7th Cir. 2002)).

Second, TTV says that, if there is a default for "TTV's failure to answer," it is "decidedly technical" and "easily remedied" by filing an "amended answer." Default Resp. 6. But TTV did not just "fail" to file, which implies some oversight or inability that is absent here. TTV *consciously chose* not to file, which differs in kind. If filing an amended answer is an "eas[y] remedy," then it would have been easy to file it when due, which is an admission that no cognizable difficulty prevented TTV from answering the Amended Complaint. And TTV's earlier factor formulation—"whether the default is largely technical," *id.* at 5—addresses the situation where there is default per those Rules but other factors allow it to be overlooked. So TTV admits it defaulted, but other factors that might justify not entering a default judgment, e.g., confusion, inadvertence, inability, are absent.

Third, TTV says BLF "cannot be unduly prejudiced by having to endure the litigation it sought out." *Id.* at 6. But what BLF seeks is payment for legal services rendered, not unnecessary litigation. TTV's *nonpayment* compelled this litigation. BLF then met the requirements of Rule 55(a) based on TTV's conscious choice to default. BLF would be prejudiced if deprived of what the Rule provides and had to endure litigation despite TTV's choice to default.

Fourth, TTV says entering the default, which Rule 55(a) provides for here, would be "unduly harsh" because it would "award BLF over $1 million in exchange for gamesmanship." Default Resp. 6. Besides erroneously conflating a default with a default judgment, there is nothing harsh

about asking TTV to pay its bills. And TTV's "gamesmanship" claim is just another example of TTV's ongoing and objectionable pejorative-language "argument by accusation."

**B.   No controlling authority supports TTV's claim of not needing to answer the Amended Complaint, nor is its argument persuasive.**

In trying to establish that "Amended Answers Are Not Required in Response to Amended Complaint That Do Not Materially Alter the Theory or Scope of the Case," Default Resp. 6, TTV cites no controlling authority relieving it of the duty to answer the Amended Complaint, *see id.* at 6-10, and its arguments are unpersuasive.

TTV begins by asserting the straw-man argument that BLF "bases its motion for entry of default judgment on a conclusory and incorrect presumption that a defendant must always file an amended answer to an amended complaint." Default Resp. 6. But BLF didn't so presume. Rather, it cited the plain requirements of Rules 15(a)(3) and 55(a), which TTV needs to counter with clear, controlling authority to avoid default. Then TTV attacks its straw man: "Contrary to BLF's presumption, a responsive pleading is not always required when an amended complaint is filed." Default Resp. 6-7. But the straw-man fallacy doesn't work.

To support its not-always-required claim, TTV first cites *KST Data v. DXC Tech. Co.*, 980 F.3d 709, 714-16 (9th Cir. 2020). But while *KST* supports the straw-man argument that answering an amended complaint isn't *always* required, it is non-controlling. And *KST* was not about default, the present issue, but whether a party waived affirmative defenses by asserting them in a first and second answer but not answering the second amended complaint. *Id.* at 711. There is no indication that the non-answer was a conscious decision despite the rules. So *KST* isn't the clear, controlling precedent TTV needed to avoid default.

Furthermore, *KST* was not followed by *Wise v. Spivey*, No. 4:20-CV-0191-SEG, 2023 WL 4401544 (N.D. Ga. May 24, 2023), which denied a motion for relief from answering a third

amended complaint based on the *KST* language that a "'defendant is not required to file a new answer to an amended complaint when the allegations in the amended complaint do not change the theory or scope of the case,'" *id.* at *1 (citation omitted). The *Wise* court denied requested relief from filing because (I) filing wouldn't be unduly burdensome, (ii) *KST* was not binding authority, (iii) an answer was needed to "maintain a clear and orderly docket." *Id. Wise* reveals that TTV should have also moved for leave not to file (to get authority not to do so) instead of presumptuously assuming it need not. And as the *Wise* court explained, "Defendants may 'cut and paste the language of their prior Answers into their respective Amended Answers,'" *id.* (citation omitted), making filing not "unduly burden[some]," *id.* TTV could have done the same here.

TTV then cites *Aircraft Holding Solutions, LLC v. Learjet, Inc. d/b/a Bombardier Aircraft Services*, 2020 WL 6262183, *3 (N.D. Tex. 2020), which appears to be the source of most of the material in TTV's Default Response. *Aircraft* granted leave to file amended answers so found no basis for granting a default motion. *Id.* at *6. But while *Aircraft* supports the straw-man argument that answering amended complaints isn't *always* required, it is non-controlling and expressly turned on "the context of this case," *id.* at *4. That context turned "especially" on delay: "Especially in light of the advanced stage of this case and the fact that plaintiffs have not brought defendants' failure to answer to the court's attention until now, plaintiffs cannot now claim that they have somehow been prejudiced [defendants'] oversight . . . ." *Id.* at *3. Here, there is no delay and no mere "oversight" by TTV, which consciously decided not to answer.

TTV then cites Wright & Miller for the proposition "'that a party should not be obliged to interpose her defenses and objections to a claim for relief by motion or answer when she is not required to file a responsive pleading.'" Default Resp. 7 (citation omitted). That supports the

straw-man argument, which is meaningless, but TTV can't *assume* it was "not required to file a responsive pleading" when the Rules require it and no clear, controlling authority relieves it of that duty. And the present issue is default, not interposing defenses and objections.

In sum thus far, TTV's three cited authorities do show that in some situations a responsive pleading hasn't always been required by some courts. But that addresses the straw-man claim that BLF said the contrary, which it didn't. Crucially, those three authorities don't establish that—in light of (i) the Rules' requirement to timely answer the Amended Complaint or face default, (ii) no clear, controlling authority that amended answers are not required, (iii) TTV's failure to claim any such special circumstance under which some courts have not entered default in the interest of justice, and (iv) TTV's failure to seek leave not to answer—TTV was not free to consciously decide not to answer. So the straw-man fallacy didn't work.

TTV says "[t]here is strong legal support for holding that it is unreasonable and unnecessary to require a defendant to file a new answer to an Amended Complaint when the allegations in the amended complaint are substantially similar to the allegations in the already answered complaint." Default Resp. 7; *see also* Amend Mot. 2 (the Amended Complaint "contained no new theory of the case and did not broaden the scope of the case"). But here, the Amended Complaint did not just repeat "substantially similar allegations," but rather it asserted wholly new and different-in-kind claims based on a completely different situation. As previously explained, the new Counts XLV and XLVI are based on a case where both TTV and BLF were sued by a disgruntled donor to TTV, and TTV signed a retainer agreement to pay BLF's attorney fees for defending itself and an Indemnity Agreement to reimburse BLF for any damages incurred as a result of that suit. TTV, however, refused to pay some of BLF's attorney fees incurred defending themselves and damages to BLF that resulted from the suit. *See generally* Am. Compl. ¶¶ 178-

194, 436-450. None of the claims in the original Complaint involved a suit against BLF, where TTV agreed to pay BLF's attorney fees to defend itself, or an Indemnity Agreement. And since TTV had reimbursed BLF for its cost of its defense up until a short time prior to this suit, *id*. at ¶ 185, it was hardly obvious that TTV would seek to avoid its responsibility to pay under these claims or that any of its defenses or counterclaims would be applicable to these claims. So the Amended Complaint asserted substantially different claims requiring an answer.

TTV also cites *Wolf Lake Terminals v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933 (N.D. Ind. 2005), to support its proposition that it did not need to answer the Amended Complaint. Default Resp.10. TTV italicizes that the answer due in *Wolf Lake* was "*ten weeks late*," *id.*, but this present case does not involve just tardiness but a conscious decision not to answer. The two thus differ in kind because choosing not to answer invokes none of the do-justice concerns that might lead a court to exercise its discretion not to enter default. The court noted that, "aside from the tardiness in filing an answer," the party had "otherwise defended this case." 433 F. Supp. 2d at 942. TTV of course is now defending, but it consciously chose not to answer the Amended Complaint, which was a crucial instance of non-defending that leads to default under the Rules. Defending now does not erase not defending at the crucial time when not defending constituted default.[9]

TTV has attempted to establish that "Amended Answers Are Not Required in Response to Amended Complaint That Do Not Materially Alter the Theory or Scope of the Case," Default Resp. 6, but it failed. TTV cites no controlling authority relieving it of the duty to answer the Amended Complaint, and, in any event, its arguments are unpersuasive. Nowhere does TTV show that an answer to the Amended Complaint was not required, when the Amended Complaint

---

[9] *Wolf Lake* also cites to the Conduct Standards, which are addressed in Part III.D,

asserts materially different claims, as a result of a conscious decision not to do so.

**C.   A purpose of "notice" doesn't abrogate controlling Rules with no controlling-authority exception, especially in the situation established in TTV's Key Admission.**

TTV says its "Original Answer, to Say Nothing of its Counterclaims, Put BLF on Notice that TTV Denies the Substantially Similar Allegations in the Amended Complaint." Default Resp. 10. Having failed to establish that it need not answer the Amended Complaint, TTV tries moving to the higher-generality "notice" level, that the original Answer "put everyone on notice of what the defendant admits and what it intends to contest." *Id*. (citation omitted).

However, as just explained, this begs the question. The Amended Complaint added new and substantially different claims based on a wholly different situation. And answers to an Amended Complaint serve valuable purposes, including making a clean record and avoiding disputes over the sufficiency of notice, so that the Rules control absent a legitimate exception not established by TTV. In fact, the Seventh Circuit put the purpose of notice in a specific, applicable context: "[t]he purpose of a *responsive pleading* is to put everyone on notice of what the defendant admits and what it intends to contest." *Edelman v. Belco Title & Escrow*, 754 F.3d 389, 395 (7th Cir. 2014) (emphasis added). So responsive pleadings fulfill the purpose of notice in the Rules-dictated way, i.e., the best notice is by a specific, responsive answer to the current, active complaint. So cases reciting notice as the purpose of pleadings, *see, e.g.*, Default Resp. 10-11, don't eliminate the need for those pleadings but justify requiring them.

TTV also says that *Edelman* and other Seventh Circuit cases "signaled" that once-denied allegations wouldn't be deemed admitted, Default Resp. 11, but that doesn't address the propriety of entering *default* where such a situation exists under the Rules. TTV notes that *Edelman* found no abuse of discretion for declining to enter a default judgment where a party failed to answer an amended complaint. Default Resp. 11. But a court recognizing mitigation in a

case to overcome the Rules doesn't mean TTV should avoid default where it consciously decided not to answer, still claims a right not to do so, and asserts no mitigation such as confusion or inadvertence.

**D.  Seventh Circuit Standards for Professional Conduct do not create a legal duty to notify.**

TTV further claims that the Seventh Circuit's "Standards for Professional Conduct Within the Seventh Judicial Circuit" ("**Conduct Standards**") expressly require an attorney "not to cause any default or dismissal to be entered without first notifying opposing counsel." *Id*. at Lawyers' Duties to Other Counsel ¶ 18. TTV alleges that, "[i]n direct violation of this rule, BLF failed to first notify TTV's counsel prior to seeking a default judgment (sic)." Default Resp. 12.

BLF acknowledges it did not provide notice to TTV's counsel prior to filing its application for entry of default by clerk, but this does not warrant refusal to enter default here.[10] First, the Conduct Standards are not "rules" that can be "violated." The Conduct Standards themselves provide that "[t]hese standards shall not be used as a basis for litigation or for sanction or penalties." *Id*. Preamble. TTV, however, seeks to use these Conduct Standards in this litigation and to impose a penalty—namely, the refusal to enter a default when required under Rule 55(a).

Second, in context with actual Rules, this Conduct Standard applies to known opposing counsel who have not entered an appearance, which is not the context here. This Court requires a duty to confer with counsel before filing specific types of motions. LR. 6-1(c) (motion for extension); LR 7-1(g)(1)(A)-(C) (motions for fees, sanctions, and disqualification). Since a

---

[10] BLF did provide TTV with notice that it believed TTV's counterclaims were without factual merit and advanced in bad faith to avoid payment of legitimate legal fees—namely, the Rule 11 notice BLF provided to TTV's counsel. *See* Reply in Support of Motion to Dismiss and in Opposition to Leave to Amend, 2. As detailed therein, it appeared to BLF that TTV had rethought its counterclaims in light of the detailed objections and potential for sanctions raised by BLF to it. *Id*.

motion for default was not included in the motions requiring a duty to confer, this Conduct

Standard would apply to a counsel who had not yet appeared (and would therefore not receive the

Court's ECF notifications), but who was otherwise known to moving counsel. That is not the

case here—TTV's counsel had filed appearances, received court notices, and were not entitled to

pre-notice under the Rules.

Three district cases support this interpretation. In all three cases where this Conduct

Standard is discussed, the defendant's counsel had not filed an appearance before the plaintiff

filed a motion for default (and would therefore not receive ECF notice), but the defendant's

counsel was "known" to plaintiff's counsel. *Hecklar & Koch, Inc. v. Coharie Arms, Inc.*, No.

1:09-CV-184-RLY-JMS, 2009 WL 10713330 (S.D. Ind. July 16, 2009); *Godfrey v. Adobe

Healthcare, Inc.*, No. 1:22-CV-175-HAB, 2022 WL 17975944, at *2 (N.D. Ind. Dec. 28, 2022);

*Sullivan v. Gen. Plumbing, Inc.*, No. 06C2464, 2007 WL 1030236, at *4 (N.D. Ill. Mar. 31,

2007) *cf., Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933 (N.D. Ind.

2005) (mentioning notification standard without finding legal duty created). Even within that

procedural context, those courts refused to use a failure to notify under this Conduct Standard as

a justification for denying a motion for default or as a reason to set aside default because they

found that the Conduct Standards do not create a legal duty to do so.

Since TTV raised the specter of non-compliance with the Conduct Standards, BLF thinks it

is compelled to raise similar issues for this Court's consideration. As detailed, TTV used

pejorative argument by adjective and accusation by alleging BLF engaged in "petty, wasteful

gamesmanship," among other things. *See* Part I. BLF draws this Court's attention to three

Conduct Standards that TTV's counsel failed to comply with in its briefing:

> 1. We will practice our profession with a continuing awareness that our role is to
> advance the legitimate interests of our clients. In our dealings with others we will

16

not reflect the ill feelings of our clients. We will treat all other counsel, parties, and witnesses in a civil and courteous manner, not only in court, but also in all other written and oral communications.

2. We will not, even when called upon by a client to do so, abuse or indulge in offensive conduct directed to other counsel, parties, or witnesses. We will abstain from disparaging personal remarks or acrimony toward other counsel, parties, or witnesses. We will treat adverse witnesses and parties with fair consideration.
. . .
4. We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.

Conduct Standards,  Lawyers' Duties to Other Counsel ¶¶ 1, 2, 4.

BLF does not ask this Court to sanction or otherwise penalize TTV's counsel for their lack of civility, their exhibited acrimony, or the (at least) implied accusations of impropriety. But BLF does highlight TTV's failure to comply with these requirements when it engaged in pejorative argument by adjective and accusation in contravention of the Conduct Standards. Default Resp. 12.

TTV wants it both ways—it maintains it was not required to file an answer to the amended complaint and default shouldn't be entered based on "hyper-technical pleading issues." Default Resp. 2. On the other hand, it uses a technical Conduct Standard, which did not create a legal duty and is not applicable in this context, as a reason why BLF's application for entry of default should be denied, while at the same time failing to comply with those Conduct Standards in its briefing. *Id.* at 12. In doing so, TTV seems to adhere to the age-old adage, "rules for thee, but not for me."

**E.  The Amend Motion should be denied, especially given TTV's Key Admission.**

TTV's Amend Motion contains the Key Admission that generally negates the arguments it puts forward in its opposition arguments. TTV admits it "made a conscious decision not to expend valuable resources responding to BLF's Amended Complaint . . . ," Amend Mot. 1, based

17

on advice of counsel that it need not, *id.* at 2. TTV says counsel determined the Amended Complaint didn't change the cases's theory or scope, "the two primary factors that counsel determined, via research, would be controlling," *id.*, so TTV was not required to file a new answer. TTV pronounces its no-amended-answer decision "reasonable." Amend Mot. 2. Yet now, after TTV's Key Admission, TTV seeks leave to answer. Leave should be denied.

As established above, TTV's advice-of-counsel argument fails because (i) TTV establishes no such exception to the answering and default Rules, (ii) TTV produces no such reasoned legal opinion on which it might have relied, and (iii) based on the arguments in the Default Response, any such legal opinion would not have been based on clear, controlling authority that TTV could not answer to save money and yet avoid default under the normal functioning of the Rules. So the requisites of an advice-of-counsel claim, even if permitted, are missing.

TTV tries to focus on things like the early stage of the case, *id.* at 2, but there is *not* an "absence of any apparent or declared reason" to deny its Amend Motion, *id.* (citation omitted). The reason to deny is that TTV consciously decided not to file an amended answer based on counsel advice that it continues to embrace, so there are no do-justice factors such as confusion about deadlines, inadvertence, claims of inadequate counsel, or the like. So TTV is wrong that "no such exception exists" to deny the amendment. *Id.* at 3.

Furthermore, TTV says BLF didn't allege an exception that would justify denying an amendment motion in its Default Application, *id.*, but errs because (i) the Default Application complied with Rule 55(a)'s simple requirements, (ii) it was not about a motion to amend, and (iii) TTV filed the Amend Motion to which BLF now *responds*, so there was no prior need to assert an exception.

TTV says it has pursued this case diligently, Amend Mot. 3-4, but by choosing not to answer

the Amended Complaint it was not pursuing this case diligently. Diligence now doesn't cure non-diligence when that non-diligence could and should cause default to be entered.

TTV says amendment should be allowed because "BLF has amended its own pleadings." *Id.* at 4. But TTV insists "TTV is not required to file a new answer to the Amended Complaint," Default Resp. 2, so that does *not* support the Amend Motion or any *need* for leave to amend.

TTV then returns to themes BLF has already addressed. The notion that "BLF has claimed no prejudice" fails because (i) Rule 55(a) didn't require that for the Default Application, (ii) this is a *response* to the Amend Motion so this is BLF's first opportunity, and (iii) prejudice exists, *supra* at 9. TTV's resort to pejorative argument by adjective and accusation—e.g., "hypertechnical," "unearned," "gamesmanship"—should not be rewarded as addressed above. *Supra* at 3-4.

TTV concludes that "BLF has done nothing to prove its claims on the merits," Amend Mot. 4, but TTV errs again by conflating a default judgment, which BLF did not seek, with a default, which BLF sought under Rule 55(a). And finally TTV says the Amended Complaint didn't alter the cases theory or scope, but the Amended Complaint did so.

Overall, though TTV insists it consciously chose *not* to answer and continues to justify that choice, it nowhere addresses the implication of that. The implication is that justice would not be served by granting leave to amend because TTV insists that no amended answer is required and asserts no reason why it needs to do so now, other than to escape the consequences of its own choice.

## Conclusion

This Court should deny the Amend Motion and direct the clerk to enter default under Rule 55(a).

Date: August 3, 2023                          Respectfully submitted,

                                              /s/ James Bopp, Jr.
                                              James Bopp, Jr. IN No. 2838-84
                                              jboppjr@aol.com
                                              *Lead Counsel for Plaintiff*
                                              Melena S. Siebert IN No. 35061-15
                                              msiebert@bopplaw.com
                                              *Counsel for Plaintiff*
                                              THE BOPP LAW FIRM, PC
                                              The National Building
                                              1 South Sixth Street
                                              Terre Haute, IN 47807-3510
                                              (812) 232-2434 - Telephone
                                              (812) 235-3685 - Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 3, 2023, a copy of the foregoing document was served on the following via the courts electronic filing system:

Cameron Powell
Gregor Wynne Arnery
301 Massachusetts Ave NW
Ste 1203
Washington, DC 20001
503-502-5030
cpowell@gwafirm.com

Michael J. Wynne
Gregor Wynne Arney, PLLC
909 Fannin, Ste. 3800
Houston, TX 77010
mwynne@gwafirm.com
*Pro Hac Vice Counsel for*
*Defendant/Counter*
*Claimant True the Vote, Inc.*

John J. Morse
Morse & Bickel, PC
1411 Roosevelt Ave., Suite 102
Indianapolis, IN 46201
morse@morsebickel.com
*Counsel for Defendant/Counter*
*Claimant True the Vote, Inc.*

James Bopp, Jr
Melena S. Siebert
THE BOPP LAW FIRM, P.C.
The National Building
1 South Sixth Street
Terre Haute, IN 47807
jboppjr@aol.com
msiebert@bopplaw.com

Michael E. Brown
Kightlinger & Gray, LLP
211 North Pennsylvania Street
Indianapolis, Indiana 46204
(317) 638-4521
mbrown@k-glaw.com

s/James Bopp, Jr.
James Bopp, Jr.
THE BOPP LAW FIRM, P.C.
The National Building
1 South Sixth Street
Terre Haute, IN 47807
jboppjr@aol.com

21